**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANG HYUN MICHAEL KIM,<br><br>                    Plaintiff,<br><br>         vs.<br><br>EARGO, INC., DONALD SPENCE, KATIE J. BAYNE, TRIT GARG, KARR NARULA, JUSTIN SABET-PEYMAN, and DAVID WU,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Sang Hyun Michael Kim ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Eargo, Inc. ("Eargo" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Patient Square Capital, LP ("Patient Square") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an October 30, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Patient Square will acquire all of the remaining outstanding shares of Eargo's common stock not currently owned by Patient Square at a price of $2.55 per share in cash. As a result, Eargo will become a private company and will no longer be publicly listed or traded on Nasdaq.

3. Thereafter, on November 21, 2023, the Company filed a Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction, followed by a Definitive Proxy Statement on January 16, 2024 (together, the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Eargo, provided by Eargo management to the Independent Special Investment

Committee of the Board (the "Special Committee") and the Special Committee's financial advisor Perella Weinberg Partners LP ("Perella Weinberg") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Perella Weinberg, if any, and provide to the Company and the Special Committee.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7. Plaintiff is a citizen of New Jersey, and at all times relevant hereto, has been an Eargo stockholder.

8. Defendant Eargo, a medical device company, markets and sells hearing aids. The Company sells its products direct-to-consumer and through omni-channel. The Company is incorporated in Delaware and has its principal place of business at 2665 North First Street, Suite 300, San Jose, CA, 95134. Shares of Eargo common stock are traded on the NASDAQ Stock Market under the symbol "EAR."

9. Defendant Donald Spence ("Spence") has been a Director of the Company at all relevant times. In addition, Defendant Spence serves as the Chairman of the Board.

10. Defendant Katie J. Bayne ("Bayne") has been a director of the Company at all relevant times.

11. Defendant Trit Garg ("Garg") has been a director of the Company at all relevant times.

12. Defendant Karr Narula ("Narula") has been a director of the Company at all relevant times.

13. Defendant Justin Sabet-Peyman ("Sabet-Peyman") has been a director of the Company at all relevant times.

14. Defendant David Wu ("Wu") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16. Non-Party Patient Square is a dedicated health care investment firm that partners with management teams whose products, services and technologies improve health.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20. Eargo, a medical device company, markets and sells hearing aids. The Company sells its products direct-to-consumer and through omni-channel.

21. In a press release on August 10, 2023, for the Second Quarter 2023 Financial Results, the Company highlighted its performance results and financial success. For example, the Company reported net revenues of $8.1 million in the second quarter of 2023, up 12% year-over-year; gross systems shipped of 5,098, up 14% year-over-year; and GAAP total operating loss $25.8 million in the second quarter of 2023, compared to $31.4 million in the second quarter of 2022.

22. Speaking on the results, CEO William Brownie stated, "Our core direct-to-consumer cash-pay segment has been stable through 2023 as compared to 2022. We continue to focus on lowering customer acquisition costs through further optimizing media spend and maintaining an efficient inside sales force. Meanwhile, demand from consumers interested in purchasing Eargo devices through our evolving retail channel continues to develop following our launch in Victra's approximately 1,500 retail locations nationwide and the FDA's over-the-counter final rule."

23. Brownie continued, noting the Company's likelihood for future success: "The cost reduction plan is expected to reduce our go-forward cash burn estimates, and we anticipate this reduced burn rate will extend our net operating cash runway into the second half of 2024."

24. The financial results are not an anomaly, but rather, are indicative of a trend of continued success by Eargo. Based upon these positive results and outlook, the Company is likely to have future success.

25. Despite this upward trajectory, the Individual Defendants have caused Eargo to enter into the Proposed Transaction without providing requisite information to Eargo stockholders such as Plaintiff.

*The Flawed Sales Process*

26. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

27. Of significant note, the Company's largest stockholder, PSC Echo, LP ("PSC Stockholder"), which through affiliated funds owns a majority of the outstanding capital stock of the Company, will be treated differently than Plaintiff and all other stockholders of Eargo. Specifically, the Proxy Statement fails to provide adequate information and explanation regarding how the distractions that holding a "Go-Shop" period to find a potential superior offer for the benefit of the public stockholders would negatively impact the Company at this juncture, and PSC Stockholder's hardline refusal to be a seller in a potential transaction.

28. The Proxy Statement fails to provide adequate information and explanation regarding Company's decision to move forward with the merger *sans* a majority of the minority vote provision.

29. Moreover, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Patient Square, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

30. Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

31. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

32. On October 30, 2023, Eargo issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **SAN JOSE, Calif.**, October 30, 2023 — Eargo, Inc. (Nasdaq: EAR) ("Eargo" or the "Company"), a medical device company on a mission to improve hearing health, announced today that it has entered into a definitive merger agreement pursuant to which an affiliate of Patient Square Capital (or "Patient Square"), a leading health care investment firm and Eargo's principal

shareholder, has agreed to acquire all of the outstanding shares of Eargo common stock not currently owned by Patient Square for $2.55 per share in cash.

The purchase price represents a premium of approximately 52% over the closing price of Eargo common stock on October 27, 2023, the last trading day prior to public disclosure of the transaction.

A special committee (the "Special Committee") of the Board of Directors of Eargo (the "Board"), comprised solely of independent directors and advised by its own independent legal and financial advisors, unanimously recommended that the Board approve the transaction and determined it was in the best interests of Eargo and its shareholders that are not affiliated with Patient Square or such management and director shareholders. Acting upon the recommendation of the Special Committee, the Board approved the transaction.

The transaction is expected to close in the first quarter of 2024 and is subject to customary closing conditions. Upon completion of the transaction, Eargo will become a private company and will no longer be publicly listed or traded on Nasdaq.

Ropes & Gray LLP is acting as legal counsel to Patient Square. Perella Weinberg Partners LP is acting as financial advisor to the Special Committee and Davis Polk & Wardwell LLP is acting as its legal counsel.

**About Eargo**

Eargo is a medical device company on a mission to improve hearing health. Our innovative products and go-to-market approach address the major challenges of traditional hearing aid adoption, including social stigma, accessibility and cost. We believe our Eargo hearing aids are the first virtually invisible, rechargeable, completely-in-canal, FDA-regulated devices indicated to compensate for mild to moderate hearing loss. Our differentiated, consumer-first approach empowers consumers to take control of their hearing. Consumers can purchase online, at retail locations or over the phone and get personalized and convenient consultation and support from hearing professionals via phone, text, email or video chat. Eargo hearing aids are offered to consumers at approximately half the cost of competing hearing aids purchased through traditional channels in the United States.

Eargo's seventh generation device, Eargo 7, is an FDA 510(k)-cleared, self-fitting over-the-counter hearing aid featuring Sound Adjust+ with Comfort and Clarity Modes, which focuses on noise reduction and adapting to the user's environment and needs. Eargo 7 is available for purchase here.

**About Patient Square Capital**

Patient Square Capital (www.patientsquarecapital.com) is a dedicated health care investment firm that partners with best-in-class management teams whose products, services and technologies improve health. Patient Square utilizes deep industry expertise, a broad network of relationships and a partnership approach to make investments in companies grow and thrive. Patient Square invests in businesses that strive to improve patient lives, strengthen communities, and create a healthier world.

*Potential Conflicts of Interest*

33. The breakdown of the benefits of the deal indicates that Eargo insiders and PSC Stockholder are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Eargo.

34. Company insiders and PSC Stockholder, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name of beneficial owner | Number of outstanding shares beneficially owned | Number of shares exercisable within 60 days | Number of shares beneficially owned | Percentage of beneficial ownership |
|---|---|---|---|---|
| **5% and greater stockholders:** | | | | |
| PSC Echo, LP[(1)] | 15,821,299 | — | 15,821,299 | 76.2% |
| Charles and Helen Schwab[(2)] | 1,089,628 | — | 1,089,628 | 5.3% |
| **Named executive officers and directors:** | | | | |
| William Brownie[(3)] | 38 | 94,639 | 94,677 | * |
| Adam Laponis[(4)] | — | 49,079 | 49,079 | * |
| Christian Gormsen[(5)] | 4,953 | 78,251 | 83,204 | * |
| Katie Bayne[(6)] | — | 11,709 | 11,709 | * |
| Trit Garg, M.D.[(7)] | — | 6,191 | 6,191 | * |
| Karr Narula[(8)] | — | 6,191 | 6,191 | * |

| | | | | |
|---|---:|---:|---:|---:|
| Justin Sabet-Peyman[9] | — | 6,191 | 6,191 | * |
| Donald Spence[10] | — | 6,191 | 6,191 | * |
| David Wu[11] | 25,463 | 11,526 | 36,989 | * |
| Mark Thorpe | 0 | 23,810 | 23,810 | * |
| All current directors and executive officers as a group (8 persons) | 25,501 | 166,448 | 191,949 | * |

35. Moreover, certain employment agreements with certain Eargo executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | COBRA Continuation ($)[2] | Equity ($)[3] | Total ($) |
|---|---:|---:|---:|---:|
| William Brownie<br>*Interim Chief Executive Officer and Chief Operating Officer* | 468,000 | 19,531 | 0 | 487,531 |
| Adam Laponis[4]<br>*Former Chief Financial Officer* | 438,750 | | 0 | 438,750 |

36. The Proxy Statement fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37. Thus, while the Proposed Transaction is not in the best interests of Eargo, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

38. The Eargo Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

a. Adequate information regarding how the distractions that holding a "Go-Shop" period to find a potential superior offer for the benefit of the public stockholders would negatively impact the Company at this juncture, and PSC Stockholder's hardline refusal to be a seller in a potential transaction;

b. Adequate information regarding Company's decision to move forward with the merger *sans* a majority of the minority vote provision;

c. Whether the confidentiality agreements entered into by the Company with Patient Square differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including PSC Stockholder, would fall away; and

e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Eargo Financial Projections*

40. The Proxy Statement fails to provide material information concerning financial projections for Eargo provided by Eargo management to the Special Committee and Perella Weinberg and relied upon by Perella Weinberg in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

41. Notably, the Proxy Statement reveals that as part of its analyses, Perella Weinberg reviewed: "certain internal financial statements, analyses and forecasts (the "Company Forecasts") and other internal financial information and operating data relating to the business of the Company, including certain assumptions regarding the Company's ability to raise sufficient capital to operate on a standalone basis in accordance with the Company's business plan, in each case, prepared by management of the Company and approved for Perella Weinberg's use by management of the Company."

42. The Proxy Statement should have, but fails to provide, certain information in the projections that Eargo management provided to the Special Committee and Perella Weinberg. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

43. With regards to the *Certain Unaudited Prospective Financial Information (Without Insurance Case)*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine Post-SBC Non-GAAP Operating Income/(loss), including specifically: Non-GAAP operating income, and stock-based compensation expense;

    b. The inputs, metrics, and assumptions used to determine Depreciation;

    c. The inputs, metrics, and assumptions used to determine Capital Expenditures;

      d.  The inputs, metrics, and assumptions used to determine (Increase) / Decrease in Net Working Capital;

      e.  The inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including specifically: any increase in net working capital, and any decrease in net working capital; and

      f.  The inputs, metrics, and assumptions used to determine Free Cash Flow, including specifically: stock-based compensation expense.

44. With regards to the *Certain Unaudited Prospective Financial Information (With Insurance Case)*, the Proxy Statement fails to disclose:

      a.  The inputs, metrics, and assumptions used to determine Post-SBC Non-GAAP Operating Income/(loss), including specifically: Non-GAAP operating income, and stock-based compensation expense;

      b.  The inputs, metrics, and assumptions used to determine Depreciation;

      c.  The inputs, metrics, and assumptions used to determine Capital Expenditures;

      d.  The inputs, metrics, and assumptions used to determine (Increase) / Decrease in Net Working Capital;

      e.  The inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including specifically: any increase in net working capital, and any decrease in net working capital; and

      f.  The inputs, metrics, and assumptions used to determine Free Cash Flow, including specifically: stock-based compensation expense.

45. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Perella Weinberg's financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Perella Weinberg*

48. In the Proxy Statement, Perella Weinberg describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49. With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the Enterprise Value for each of the selected companies;

    b. The specific inputs, metrics, and assumptions used to determine the 2024E Revenue for each of the selected companies;

    c. The specific inputs, metrics, and assumptions used to determine the EV/2024E Revenue for each of the selected companies;

    d. The specific inputs, metrics, and assumptions used to determine the multiples range of 0.6x to 1.4x utilized for the "with-insurance case;"

    e. The specific inputs, metrics, and assumptions used to determine the multiples range of 0.0x to 1.1x utilized for the "without-insurance case;"

    f. The number of fully diluted shares of the Company utilized; and

    g. The specific inputs and assumptions used to determine the multiple range of 3.5x to 6.0x utilized.

50. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

    a. The implied net present value of the estimate standalone unlevered free cash flows of the Company for the years of 2024 through 2033, and the inputs, metrics, and assumptions used to determine same;

    b. The inputs, metrics, and assumptions used to determine the discount rates of 13.0% to 15.0%;

    c. The weighted average cost of capital for the Company utilized;

    d. The inputs, metrics, and assumptions used to determine the present value of the Company as of October 27, 2023 utilized;

    e. The inputs, metrics, and assumptions used to determine the perpetuity growth rates ranging from 3.0% to 4.0% utilized.

51. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

52. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Eargo stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

53. Plaintiff repeats all previous allegations as if set forth in full herein.

54. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

55. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

56. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

57. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that

- 15 -
COMPLAINT

the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

58. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

59. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

60. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

61. Plaintiff repeats all previous allegations as if set forth in full herein.

62. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

63. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual

Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Eargo's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

65. The Individual Defendants acted as controlling persons of Eargo within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Eargo to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Eargo and all of its employees. As alleged above, Eargo is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein

not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 22, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*